IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DONALD LEWIS HOFER<br><br>v.<br><br>CHENIERE LNG O&M SERVICES, LP,<br>CHENIERE ENERGY SHARED<br>SERVICES, INC., and<br>CHENIERE ENERGY, INC. | Case No. 4:22-cv-00693<br>Jury Demanded |

**PLAINTIFF'S ORIGINAL COMPLAINT**

1. Plaintiff Donald Lewis Hofer ("Hofer") brings this lawsuit against Defendants, Cheniere LNG O&M Services, LP; Cheniere Energy Shared Services, Inc.; and Cheniere Energy, Inc. (collectively "Cheniere").

2. Cheniere fired Hofer because of his age.

3. Cheniere's termination of Hofer's employment violates the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA").

4. Hofer seeks to recover damages caused by Cheniere's violations of the ADEA.

**I. Parties & Service**

5. Plaintiff, Donald Lewis Hofer, is an individual residing in The Woodlands, Texas.

6. Defendant, Cheniere LNG O&M Services, LP, is a limited partnership organized under Delaware law; is registered to conduct business in Texas; has its principal office in Houston; and may be served with process

by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

7. Cheniere LNG O&M Services, LP was Hofer's employer.

8. Cheniere LNG O&M Services, LP is a wholly owned subsidiary of Cheniere Energy Shared Services, Inc.

9. Defendant, Cheniere Energy Shared Services, Inc., is a corporation organized under the laws of Delaware; is registered to conduct business in Texas; has its principal office in Houston; and may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

10. Cheniere Energy Shared Services, Inc. was Hofer's employer.

11. Cheniere Energy Shared Services, Inc. is a wholly owned subsidiary of Cheniere Energy, Inc.

12. Defendant, Cheniere Energy, Inc., is a corporation organized under Delaware law; is registered to conduct business in Texas; has its principal office located in Houston; and may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

13. Cheniere Energy, Inc. was Hofer's employer.

## II. Jurisdiction & Venue

14. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

15. The Court has personal jurisdiction over Cheniere because Cheniere is domiciled within the Southern District of Texas.

16. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because Cheniere resides within this District and a substantial part of the events or omissions giving rise to Hofer's cause of action occurred within this District.

## III. Applicability of the ADEA

17. At all relevant times, Cheniere was engaged in an industry affecting commerce.

18. At all relevant times, Cheniere had 20 or more employees.

19. At all relevant times, Cheniere was Hofer's employer.

20. At all relevant times, Hofer was at least 40 years of age.

## IV. Procedural Requisites

21. On November 6, 2020, Hofer filed a Charge of Discrimination against Cheniere with the United States Equal Employment Opportunity Commission ("EEOC") under Charge No. 460-2021-00698 alleging that Cheniere discriminated against him because of his age in violation of the ADEA.

22. Hofer filed his EEOC Charge within 300 days following the date

Cheniere unlawfully terminated his employment.

23. On December 8, 2021, the EEOC issued a right-to-sue letter.

24. Hofer filed this lawsuit with the Court within 90 days of the date that the EEOC issued its right-to-sue letter.

25. Hofer exhausted his administrative remedies.

26. Hofer fulfilled all necessary conditions precedent to filing this action.

## V. Facts

### Background

27. Cheniere is a Houston-based energy company primarily engaged in various businesses related to liquified natural gas ("LNG").

28. Cheniere transports LNG to overseas customers via specially designed LNG shipping tankers.

29. Hofer was born on February 25, 1958.

30. Hofer began his employment with Cheniere as Operations Manager on or about August 15, 2006.

31. Hofer worked in Cheniere's Marine Department.

32. In July 2016, Cheniere hired Guy Nicholls as Director of Marine Operations.

33. Nicholls became Hofer's direct supervisor in October 2016.

34. Nicholls was Hofer's direct supervisor from October 2016 until Cheniere terminated Hofer's employment on January 20, 2020.

**Nicholls' Age Bias**

35. Soon after Nicholls became Hofer's supervisor, Nicholls asked those present at a Marine Department meeting to provide a summary of their career accomplishments.

36. After Hofer presented his accomplishments, Nicholls asked Hofer how old he was.

37. When Hofer told Nicholls that he was almost 60, Nicholls seemed surprised and asked Hofer how long he planned to continue working. Nicholls' inquiry constitutes some evidence giving rise to an inference of discriminatory motivation behind Hofer's later termination. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005) (finding evidence that, immediately following his first meeting with his supervisor, older employee was asked by supervisor when he planned on retiring constituted some evidence giving rise to inference of discriminatory motivation and citing *Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 208).

38. Hofer responded that he wanted to work until he was 70.

39. Nicholls stated disapprovingly that a friend of his "keeled over dead" at an incredibly young age while working in Nigeria and that Nicholls did not think anyone should work until they were 70 years old.

40. Over the next several years, Nicholls repeatedly asked Hofer how long he planned to work.

41. Several times over the years that Nicholls supervised Hofer,

Nicholls retold to Hofer the story of Nicholls' friend dying young on the job in Nigeria.

42. Nicholls also mentioned to Hofer with disapproval that another friend of his, who was in his seventies and worked for Tellurian, was still working.

### Hofer's Job Performance

43. Hofer performed his job at a high level throughout the term of his employment.

44. In the last few years of his employment, Cheniere awarded Hofer bonuses and their highest safety award in recognition of his contributions to the organization.

45. For example, Cheniere awarded Hofer a spot bonus on or about November 20, 2018, for his "extraordinary efforts and tremendous achievement of establishing LNG Carriers into the Port of Corpus Christi Pilot Rules to permit night time transits on a trial basis."

46. In August 2019, despite Hofer's tremendous success in completing the Marine Department's key long-term projects, Nicholls suddenly and inexplicably began to criticize Hofer's job performance.

47. When Nicholls began criticizing Hofer's job performance, Hofer developed a work plan spreadsheet to show Nicholls the work he planned to perform through December 31, 2019 (the "Work Plan").

48. Nicholls approved the Work Plan that Hofer developed.

49. However, between August 2019 and October 23, 2019, Nicholls repeatedly changed the order and scope of the Work Plan.

50. Months before the agreed end date of the Work Plan, Nicholls placed Hofer on a performance improvement plan ("PIP").

### Hofer's PIP

51. Nicholls and Hofer signed the PIP on October 23, 2019.

52. The term of the PIP was 90 days.

53. Attempting to save his job, Hofer began working even harder after signing the PIP document. For example, Hofer covered for the other Marine Department team members by working over the Christmas and New Year's holidays in 2019/2020.

54. During the October 2019 through January 2020 timeframe, Hofer successfully completely all of the tasks assigned to him.

55. Hofer timely and successfully completed his assignments related to the Cheniere Marine Assurance System ("CMAS") berth project. Hofer completed the final Maritime Institute of Technology and Graduate Studies ("MITAGS") review, obtained approval from the Port of Aransas Corpus Christi Pilots, and coordinated completion of all other requirements needed to conclude the berth project at Cheniere's Corpus Christi Liquefaction facility.

56. Hofer timely and successfully completed his assignments related to the marine cadetship program.

57. Hofer wrote the Qualship 21 report, which he presented to

Nicholls, and timely and successfully completed his assignments related to the Qualship 21 Program.

58. Hofer timely and successfully vetted an average of at least five ships per week.

59. Hofer helped troubleshoot the CMAS database, populated bunker feedback templates into the CMAS database, and loaded other data into the CMAS database for all, or nearly all, of the liquefied natural gas carrier terminals in the world.

60. Hofer timely and successfully participated with other Marine Department employees in the document review process relating to the Marine Assurance Policy and Standard.

61. Hofer attended the weekly Cheniere Marketing International ("CMI") calls and provided substantive support. For example, Hofer reviewed the Corpus Christi waterway for CMI with all players for traffic counts, reviewed expansion projects for CMI, participated in discussions relating to future business opportunities such as floating storage and regasification units (FSRUs), and reviewed feasibility studies as requested.

62. In short, Hofer timely and successfully completed all of the PIP requirements.

63. Hofer was ready, willing, and able to begin the CMI response drill project, but he was never afforded the opportunity to do so.

64. Nicholls did not want Hofer to work on the CMI response drill

project because Nicholls had other work that he wanted Hofer to complete first.

65. Nicholls stated that he would travel to Panama with Hofer to run the CMI response drill, but Nicholls never made himself available to complete the drill in Panama.

66. Although the deadline for the CMI response drill project was the end of January 2020, Cheniere discharged Hofer on January 20, 2020, prior to the deadline.

67. Despite Hofer's successful completion of all PIP tasks, Nicholls treated the outcome of the PIP as a *fait accompli*.

68. Nicholls conducted only one or two of the required weekly PIP review meetings with Hofer.

69. Nicholls cancelled the other weekly PIP review meetings, telling Hofer that they were not necessary.

70. Hofer received little to no feedback from Nicholls regarding his performance under the PIP and no indication that Nicholls considered his PIP performance unsatisfactory.

71. Hofer was not given the opportunity to complete the PIP. Cheniere terminated Hofer on the 89th day of the 90-day PIP.

**Cheniere Destroyed Evidence of Hofer's Job Performance**

72. For years, including all times relevant to this lawsuit, Hofer kept daily notes regarding meetings he attended and descriptions of the work he performed for Cheniere. Such notes often included, not only dates and times

of meetings, but also quotes from meetings and conversations.

73. Hofer's daily notes documented the nature of his performance under the Work Plan and the PIP.

74. Hofer's daily notes documented his meetings and other interactions with Nicholls.

75. Nicholls knew that Hofer kept such notes; Nicholls laughed and made fun of Hofer for taking notes during meetings.

76. Hofer's daily notes regarding the work he performed for Cheniere, including work he performed between August 2019 and January 20, 2020, remained in Hofer's former office after Cheniere discharged Hofer.

77. After his termination, Hofer requested that Cheniere return his notes to him, but Cheniere claimed that the notes belonged to Cheniere and refused to return them.

78. In January 2020, after Cheniere terminated his employment, Hofer requested that Cheniere preserve his handwritten work notes and certain electronic files stored on Cheniere's computer systems.

79. Cheniere destroyed Hofer's notes after he requested in writing that Cheniere return or preserve them.

80. Cheniere had control of Hofer's daily work notes and had an obligation to preserve them at the time they were destroyed.

81. Cheniere destroyed Hofer's daily work notes knowing that they were relevant to Hofer's potential legal claims against Cheniere.

10

82. Hofer's daily work notes were relevant to his age discrimination claim such that a reasonable trier of fact could find that such notes would support Hofer's age discrimination claim.

83. Cheniere spoliated important evidence in this case such that Hofer is entitled to an adverse inference jury instruction.

### Direct Evidence of Age Discrimination

84. During a Marine Department meeting on or about January 15, 2020 – just five days before Hofer's termination – Nicholls stated, "We have to do something with the age of the Marine Department; none of us are getting any younger."

85. Nicholls also said, "We have to change the demographics and lower the age."

86. As of January 15, 2020, Hofer was the oldest member of the Marine Department.

87. Nicholls knew that Hofer was the oldest member of the Marine Department.

88. Hofer and several other Marine Department employees were present for the January 15, 2020, meeting when Nicholls made these age-related comments.

89. Two days after Hofer's statements, on or about Friday, January 17, 2020, Hofer received a calendar invitation for a meeting with Nicholls to be held on Monday, January 20, 2020.

90. On January 20, 2020, Nicholls asked Hofer to meet in the office of HR Business Director, Mike Wood ("Wood").

91. When Hofer arrived for the meeting, Wood informed Hofer that Cheniere was terminating his employment.

92. During the termination meeting, Nicholls said to Hofer in Wood's presence, "Christ, you want to work to age 70!"

93. Nicholls was 55 years of age when he decided to discharge Hofer; Hofer was 61.

94. Nicholls' comments during the January 15, 2020 Marine Department meeting and the January 20, 2020 termination meeting are direct evidence of age discrimination against Hofer because they were (1) age related; (2) proximate in time to Hofer's discharge from employment (the termination meeting was scheduled only two days after the comments were made, the termination meeting occurred five days after Nicholls made the comments, and one statement was made during the termination meeting); (3) made by Hofer's direct supervisor, who made the decision to terminate Hofer's employment; and (4) were related to lowering the age demographic in the Marine Department, which Nicholls accomplished by terminating the oldest member of the team, Hofer. *See McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 457 (5th Cir. 2019) (stating the standard for comments that constitute direct evidence of age discrimination).

95. The Fifth Circuit Court of Appeals has overturned summary judgment in age discrimination cases when the parties contested the quality of plaintiff's job performance and there was evidence that the plaintiff's supervisor made ageist comments. *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503 (5th Cir. 1988) (summary judgment overturned when supervisors commented that employee should look "sharp" if he was going to interview for another job and commented on employee's inability or willingness to "adapt" to new systems in the department).

96. On information and belief, other members of Cheniere management, including but not limited to Nicholls' supervisor, Senior Vice President of Operations, Aaron Stephenson, knew about Nicholls' plans to fire Hofer because of his age.

97. In January 2020, Cheniere knew that it was a violation of the ADEA to discharge an employee because of his age. Cheniere has several written policies that purport to prohibit age discrimination.

### Cheniere Benefited Economically from Hofer's Unlawful Termination

98. Hofer's annual base salary at the time of his termination was $178,000.

99. Cheniere fired Hofer less than two months before Hofer's annual incentive bonus for fiscal year 2019 was to be paid in March 2020.

100. Hofer's anticipated annual bonus for fiscal year 2019 was to be approximately $110,360 (being Hofer's annual salary of $178,000 multiplied

by Cheniere's 1.55 scorecard percentage based on company performance multiplied by Cheniere's 0.40 bonus multiplier).

101.   Based on the annual bonus amounts Hofer received from Cheniere in the past, it is reasonable to expect that Hofer would have received similar annual bonus amounts each year of his employment with Cheniere.

102.   Cheniere fired Hofer less than a month before restricted stock units ("RSUs") granted to Hofer were to vest.

103.   Hofer's RSUs, having a value at the time of over $100,000, would have vested in February 2020 had Hofer's employment with Cheniere continued.

104.   Cheniere fired Hofer less than two weeks before he was to qualify for grants of additional RSUs.

105.   Based on RSU grants he received from Cheniere in the past, it is reasonable to expect that Hofer would have received similar RSU grants with similar values each year of his employment with Cheniere.

106.   Under Cheniere's severance plan, Hofer would have been eligible for approximately $198,534 in severance benefits (being 4 weeks of salary per year of service multiplied by 14.5 years of service to Cheniere which equals 58 weeks of severance at Hofer's annual salary of $178,000) had Cheniere not fired Hofer because of his age.

107.   By firing Hofer because of his age, Cheniere deprived Hofer of his base salary, health insurance and other benefits, annual incentive bonuses,

vesting of previously granted RSUs, additional grants of RSUs, and severance benefits under Cheniere's applicable severance plan.

108. By firing Hofer because of his age, Cheniere also destroyed Hofer's career and deprived him of future compensation and benefits including base salary, health insurance and other benefits, annual incentive bonuses, vesting of previously granted RSUs, and additional grants of RSUs.

109. Despite his diligent efforts, Hofer has not been able to secure substantially equivalent employment since Cheniere fired him because of his age.

### Nicholls' Post-Termination Animus Toward Hofer

110. After Cheniere terminated Hofer's employment, Nicholls told a member or members of the Aransas-Corpus Christi Pilot Board that the Board should not hire Hofer as their Business Director.

111. The Aransas-Corpus Christi Pilot Board did not hire Hofer.

### VI. Cause of Action -- Age Discrimination Under the ADEA

112. Hofer incorporates by reference all preceding paragraphs in this Complaint.

113. Whenever Hofer alleges in this Complaint that Cheniere committed an act or omission, such allegations include the acts and omissions of Cheniere's agents and employees while engaged in the course and scope of their agency or employment.

15

114. At all relevant times, Hofer was in the protected age class under the ADEA.

115. Cheniere discharged Hofer because of his age in violation of the ADEA. But for his age, Cheniere would not have terminated Hofer's employment when it did.

116. Cheniere also discriminated against Hofer with respect to his compensation, terms, conditions, or privileges of employment because of his age in violation of the ADEA. But for his age, Cheniere would not have deprived Hofer of the ability to collect severance and other valuable benefits and compensation.

117. As a direct result of Cheniere's conduct, Hofer lost compensation and benefits from the date of his termination through the date of trial, for which he seeks to recover as back pay. At the time of the filing of this Complaint, the amount of Hofer's back pay is at least $356,000 for his base salary for 2020 and 2021, plus an estimated $53,400 in lost benefits (being 15% of his base salary for two years), plus $110,360 as the amount of anticipated annual bonus for 2019, plus $220,720 for similar annual bonuses for 2020 and 2021, plus $100,000 for previously granted RSUs, plus $200,000 in anticipated additional RSU grants in 2020 and 2021, for a total of at least $1,040,480.

118. Hofer also lost at least $198,534 in severance benefits.

119. In addition, Hofer demands front pay, including all differential between his compensation with Cheniere (including base salary, annual

16

bonuses, stock options, health insurance, and other benefits) and his compensation with any future employers.

120. Federal courts of appeals, including the Fifth Circuit Court of Appeals, have upheld front pay awards of at least five years in age discrimination cases. *See Jackson v. Host Intern., Inc.*, 426 Fed. App'x 215, 224 (5th Cir. 2011) (affirming an award of five years of front pay in the amount of $455,000).

121. Cheniere's management knew that it was unlawful to discriminate against Hofer based on his age and yet willfully violated the ADEA.

122. Because of the willful nature of Cheniere's violations of the ADEA, Hofer also seeks liquidated damages in an amount equal to his back pay.

123. It was necessary for Hofer to secure counsel to prosecute this matter on his behalf.

124. Hofer seeks to recover all of the costs and attorneys' fees that he incurred due to Cheniere's violations of the ADEA.

### VII. Jury Demand

125. Hofer demands a trial by jury and has paid the jury fee.

### VIII. Request for Relief

126. For these reasons, Hofer asks that Cheniere be cited to appear and that, after proper notice and hearing, the Court:

a. award Hofer back pay and reinstatement or front pay;

b. award Hofer liquidated damages in an amount equal to Hofer's back pay for Cheniere's willful violations of the ADEA;

c. award Hofer his attorneys' fees and costs;

d. order that Hofer recover pre-judgment and post-judgment interest for all amounts awarded against Cheniere; and

e. grant Hofer all other relief, as permitted by law or in equity, to which he may be justly entitled.

Dated: March 4, 2022  Respectfully submitted,

**Stuart PC**

By: */s/ Laurence E. Stuart*
Laurence E. Stuart
(attorney-in-charge)
Texas Bar No. 00794705
S.D. Tex. No. 19744
lstuart@stuartpc.com
C. Keith Lea (of counsel)
Texas Bar No. 24048269
S.D. Tex. No. 610767
klea@stuartpc.com
712 Main, Suite 1100
Houston, Texas 77002
Telephone: 713.337.3750
Facsimile: 713.481.6320

*Attorneys for Plaintiff, Donald Hofer*